We'll call the next case, 24-1473, Gays Against Groomers v. Garcia. Please proceed. Good morning, Your Honor. Endel Kold for Gays Against Groomers et al. May it please the Court, having opened a portion of its committee meetings for public comment and invited citizens to share their own opinions about pending legislation, the Colorado General Assembly cannot discriminate based on viewpoint. But Colorado officials did just that when they banned misgendering, deadnaming, or disrespecting public figures. And they proposed to do so again using their highly flexible decorum rules. This Court should reverse, because the District Court erred when it held that plaintiffs' claims were barred by absolute legislative immunity. First, the act of enforcing the General Assembly's speech restrictions were executive or administrative in nature, not legislative. So let's talk about that, because that seems like a hard argument to make for me. So I realize we have the Kim Plain case? Kim Plain and Borty. Yeah, and the name was escaping me for a moment. But that was a case where there was sort of a blanket exclusion of somebody after the speech had taken place, and they were basically never to come back. And what concerns me is it seems like public comment and consideration of public comment and rules of decorum are inherently legislative functions. How can this not be part of the legislative process? Well, I would say that part of Kim Plain is there can be a mixed use, kind of a dual use situation. It may be that some applications of the decorum rules are exercise of a legislative function, and other exercises of it are not. We would submit that here they were enforcing a censorship regime. It is functionally tantamount to excluding somebody or denying them permanently the right to speak. How can we know that? How can we tell that this is part of a censorship regime, though? I mean, the other side could say, oh, absolutely not. It's a decorum rule. We have people in the audience who take this very seriously, and we're trying to prevent disruption so we can continue with our business. They have said specifically that you cannot misgender, dead name, or say anything disrespectful about a transgender individual if they're the namesake of legislation. They're very clear about it. No, I understand they've said that, but they can have a reason for it that was related to the legislative function. We don't know what their reason is. No, their reason specifically that they've said is they don't want hurt feelings. They don't want their constituents to be upset by what they might hear in the hearing room. They've been very clear about that. That's in the briefing, and that is not a valid reason. That's essentially a codified— But that's not the issue before us on appeal, is it? I mean, the reason for the rule decorum, aren't we only to consider whether or not they have immunity? And in fashioning this rule as part of a committee hearing, in consideration of a bill and a proposal that goes before the legislature, if that's part of the sphere of legislative activity, then they're immune. So it doesn't matter to us, or does it, I guess, whether or not the rule of decorum is justified or not. We think it does matter, Your Honor. How? So, well, there are three arguments. So number one on this immunity issue, number one is that this is an executive or administrative function. We've talked about that a little bit, and we can talk about it some more. Second, that legislative immunity is a personal defense. It's not an offense that runs to the legislative body or the state. Do you have any cases that support that theory? Yeah, Sable, Graham, Kentucky v. Graham. Do you think all those cases hold that they extend that essentially ex parte young type remedy in that manner to legislative immunity? I wouldn't read it that way. They say those cases very clearly say that a personal defense cannot be raised by an official to bar an official capacity claim. And our claims for injunctive and declaratory relief are official capacity claims. The Supreme Court has said that. This court has said that in Sable. This court was correct in Sable in ruling that. That is binding. It was binding on the legislature. It was binding on the district court below. And frankly, under the principles of stare decisis, it's binding on this court as well. The official capacity claims cannot be blocked by a personal defense. Legislative defense, legislative immunity is a personal defense. Potentially, it could block the nominal damages claims if this court finds it's not an enforcement function. But a personal defense cannot be used to block a claim for injunctive relief. And Sable v. Myers very clearly held that. But can a legislative body, not personal, but the legislative body, establish manner, time, place, manner for testimony? And isn't this, I'm not talking about immunities, but just isn't this within their parameter to establish time, place, and manner of testimony before them? So can they establish time, place, and manner restrictions? Yes. But this is not a time, place, and manner restriction. It struck me it was. It said the manner that we are imposing is you're not going to defame other people. That's the manner of the presentation. Well, they specifically said in a particular way by misgendering or dead naming, which is an ideological point of view, my clients choose not to lie about biological sex and use ideologically laden language that they reject. By the way, the majority of Americans reject that language too. So they are just speaking in common sense terms that everyday Americans use every day to talk about men and women. And they are being censored under this decorum rule. Plaintiffs or, excuse me, defendants are very clear that it's misgendering and dead naming that's off limits. When you say the word dead naming, define that phrase. Dead naming is a subset of misgendering, Your Honor. It means using somebody's name before they transition to their new gender. So if somebody was illegally born as, you know, John, John Smith, and then they became Jamie Smith later on, after they changed their gender, then using that name John would be considered dead naming. It's using their dead name. And that is considered offensive to people that buy into gender ideology. And clearly, and defendants said this is why we're preventing that, those kind of terms from being used. So it wasn't that you're being loud or obstreperous or talking too long. It was the content of what you're saying that we're not going to allow. But because that could, could the legislature say in testimony before us, nobody is going to use the N word if we're talking about racial questions. Could they say that? It's an interesting question, Your Honor. I think that it depends whether you're making a sociopolitical point with it. For example, under Cohen, you know, somebody could come in and wear fuck the draft in a courthouse. And the court specifically said, the Supreme Court said that is expressing a sociopolitical viewpoint. If it's just a gratuitous use of the N word, I would say no. You can't, you know, that could not be allowed. So in your case, if somebody was dead naming somebody to be snarky and nasty, that could violate a rule of decorum. But if they were making a substantive argument about legislation, then they could dead name someone. Correct, Your Honor. Isn't that really hard for courts to police? Well, in this case, it's not. I mean, how do we know? In this case, it's not hard at all because they wouldn't allow it. And my clients were just making a sociopolitical point. They were not allowed to express themselves. I mean, this legislation was named after Tiara, this man who had transitioned, and he had a criminal history. They weren't allowed to discuss the criminal history that he had. They weren't allowed to use his real legal name. Would they have been allowed to discuss the criminal history if they would have not tried to use his, the name he was originally given as opposed to Tiara? I think probably not because it would have been disrespectful of him. I mean, the whole bill was about criminal history. The bill was about name changes. It was allowing felons to change their names, wasn't it? It was changing a lot. Didn't I see that in the briefing? To allow transgender individuals for that to become an automatic reason to allow for a name change, essentially. Okay, I thought I saw in the briefing that there was some indication that it would make it easier for felons to change their names. That was an argument that my clients wanted to make, that they were not allowed to. Okay, fair enough. I do want to address a third point in response to what Judge Federico had asked before I run out of time, and I want to leave a couple minutes for rebuttal if that's possible. The third point is that applying legislative immunity in this circumstance would conflict with longstanding forum analysis. The parties and the court, well, the parties certainly agree that this is a limited public forum. In a limited public forum, you can't have viewpoint discrimination. They very clearly engaged in viewpoint discrimination. I want to specifically call the court's attention to the fact that the legislature made a decision to open up this forum for citizens to express their opinions about pending legislation. In so doing, they created a limited public forum, at least on that issue. People who support legislation like Tiara's law are able to express themselves the way they want to. My clients, because they dissent from gender ideology and they don't want to use ideologically laden language that they disagree with, are not allowed to express themselves. That's the problem here, and finding legislative immunity here would essentially allow legislative or quasi-legislative bodies to censor all sorts of people that they simply disagree with. Your Honor, I'd like to reserve the remainder of my time unless there are further questions at this point. Thank you. Okay, thank you, Counsel. Good morning, Your Honors. Edward Ramey and Martha Tierney here on behalf of the defendant-athlete legislators. I guess I'd like to back off a little bit from where the discourse was going a few moments ago and bring us back to the fact that the primary defense that we have asserted in this case is legislative immunity. If we are within the sphere of legitimate legislative activities, legislative immunity, which is an absolute immunity, motives and other considerations aside. It is a personal immunity. Legislative immunity, like all immunities as I understand it, are personal immunities for individuals that are legislators. Yes. I am not aware that legislative immunity can be asserted by an institution like the legislature. Now, there may be other problems with suing the legislature, but not because of legislative immunity. Do you agree or disagree? I partially agree in that in this particular case, and I do want to emphasize this, the Colorado General Assembly as an institution was not named. And for a lot of reasons we could talk about. The individuals that were named were the committee chairs, the sponsors, and one other. But acting in their official capacity. Acting solely and exclusively in their capacities as state legislators. So in essence, the legislature was named. We say when you are sued in your official capacity, it's the equivalent of suing the institution. I think that is correct, Your Honor. And I think what was appearing here was an attempt to avoid sovereign immunity issues. I'm sure. That's why they named the individuals. But as in Tenney v. Brando, which is sort of the seminal case in this whole area, as in Tenney, individual legislators were named. So the question then comes down. The question then comes down, this is not an 11th Amendment immunity case. This is an absolute, and the district court totally understood this, this is an absolute legislative immunity case. And if we are acting as legislators in this case, within the sphere of legitimate legislative activity, in this case a committee hearing to consider the merits of a bill, it stops, the inquiry stops there. And I would even point back, there was no question in this case that the subject matter before the committee, the testimony that was being proffered, was about pending legislation. This was even more core legislative function, I would respectfully submit to the court then, in Tenney itself, where Brando was making accusations that he was brought before the committee under subpoena, not for the consideration really of any legislation as such, but to intimidate and punish him for political activities in a gubernatorial race in California prior to that. So in your view, even though the committee chairs and various folks are acting in their official capacity, these rules of decorum could have been, we're not going to allow anyone to speak against the bill, only people in favor of the bill may speak. We're not going to allow people to criticize any individual legislators or their positions in the meeting. Only people who want to speak positively about individual legislators may speak, and that would be absolutely immune. Technically, I would say yes, that is not what happened here. No, I'm not saying it happened, but that's your position. Well, I think that is the point of the Tenney case. And actually, that poses a question. So in your view, you can discriminate against viewpoints as long as it's in a legislative hearing and people are invited to speak, and it's absolutely immune, whether it's someone being sued in their individual capacity or their official capacity. First, let me just comment about the court, because I think that's a perfect question that goes to the heart of Tenney. I think the answer to that question is yes. If we are within the context of a legitimate legislative function, which there is no doubt we were here, the inquiry stops there. It's whether it's discriminatory and you didn't give these people an opportunity to talk as much as these people. If we are within the sphere of legitimate legislative activity, the inquiry stops. That is where the absolute immunity sets in and the district court so holds. Counsel, can I ask you about the applicability of the campaign case where it talks about committee hearings? No doubt this is a hearing, but is it common in the Colorado legislature to have public comments on pending bills? Yes. Okay, so this may not be something I'm familiar with in other legislative bodies. So the public commentary is part of any other discussion the legislators have concerning pending legislation. It's all sort of wrapped up in the same. It's not a separate session. Yes, there's a history to how we got to this. But the legislature is constitutionally required in Colorado to send all legislation to committees in both houses. They do that. They are not constitutionally or, to my knowledge, statutorily required to receive public testimony or invite public testimony. They do it and there are rules that both houses of the state legislature have adopted that define how it's done. And a lot of that, by the way, a compliment to Mr. Colden. I mean, everything you need to know about the facts of this case is in the complaint. It's all in there and you can see exactly what happened. But there are rules that address inviting public comment. In fact, public comment was invited in both sides. And all this was was a bit, I guess, of a practice standard. I'm justifying it now. I kind of don't want to do that because I don't think under Tenney I should be required to justify it, but I can justify it. And that they were trying to keep a level of decorum where the meeting would explode and not be useful to the legislature. So how do we know that? That's not in the record, is it? Well, it's in the briefing. It's not in the record. What's in the record is what happened. And you can see what happened when people started deadnaming and misgendering. Now, I don't want to get into a debate whether deadnaming and misgendering should be allowed. I would, even if this weren't a legislative committee, I would call that content as opposed to viewpoint discrimination. But that's a matter the district court didn't even address because they didn't have to. And I guess here's the primary point, if I say nothing else up here, that I would want to emphasize. It doesn't matter in the context of absolute legislative immunity whether we think this was a reasonable rule or they should have done it this way rather than that way. The point of the Tenney case is that if it's within that legislative sphere, in the scope of legitimate legislative activity, it stops there. The inquiry stops. We're done. Nothing more. Counsel, the district court said that neither this court nor the Supreme Court, though, has reviewed whether the enforcement of decorum rules during a hearing is within the legislative sphere. What is your assessment of that? I would say it is clear it had to be within the sphere because we were in the context of the committee. I get your argument for it, but do you agree with the district court, though? There's no authority that has reviewed the enforcement of decorum rules. Any other cases in this particular context?  That is correct, Your Honor. And I suppose one of these days this is coming. I will say this. I have looked. I am aware of no, for example, circuit court of appeals that has decorum rules of that nature. There are U.S. district courts, including this one, the one that we just came out of, that has such decorum rules. And, frankly, a motion was filed, and we never got to a situation where we had to deal with that. And we're kind of moving into the area of judicial prerogatives there, where I don't want to go. So, I mean, you've raised, I think, a very, very good question. But the point that I'm sort of, I guess, pounding unnecessarily is that Kenny says it doesn't matter. We can be as ugly and discriminatory as we want if we're within that legislative sphere. Well, let me ask you this, though. I mean, because not disagreeing with you that it seems to say that. But then we have Sable that seems to disagree with you, at least insofar as it concerns official capacity claims. Well, let me respond to that. But I want to preface this with a statement that I am aware that a member of this panel was a member of the panel of Sable. It wasn't this one. And I'll stop there. But I am aware of that situation. Sable, a couple things. Sable was a damages action, number one. Number two. Okay, so let's just stop there for a moment. So on a nominal damages claim, would you contest that they could pursue an official capacity action? Well, if it's all about damages and nothing else, they wouldn't be doing official capacity. Because I think what happened here is we've gotten confused with the 11th Amendment immunity issue, where you can't sue the state of Colorado, you sue individuals. And they have sued individual legislators trying, and I understand, trying to do that. Here's what strikes me about Sable. Because, I mean, Sable's the opinion. I mean, you understand that some of the language seems to conflict with your position. Yes. Okay. But let me tell you how I'm reading that language. And that's why I prefaced it with a cautionary note on what Sable meant. But Sable, it has the words that Your Honor is presenting to me. It then, within ten words prior to making that statement, and two or three lines later, directly and approvingly, not surprisingly, cites the seminal case from the United States Supreme Court, Supreme Court of Virginia versus Consumers Union, which unequivocally, clearly holds that legislative immunity applies to prospective relief claims, declaratory and injunctive. And I'm not used to reading opinions from the Tenth Circuit that not only don't go where the Supreme Court has said to go, but then literally defy it. Here's what they said, but we're going to do something else. So I don't think Sable can or should be read that way. Consumers Union is very clear. Consumers Union was a fascinating case. I mean, it was very clear in that all three sort of branches of government were at issue there. The Virginia Supreme Court legislated the rules of professional conduct. They were then enforced by the same body, which is an executive function, and they were adjudicated by the same body. So the judicial function was all folded into one. And the Supreme Court was very clear that as to the administrative slash executive and judicial functions, there is no prospective application of legislative immunity. But with the legislative piece of it, the opinion is very clear, the absolute immunity applies, period. And, again, it's not because of who's right or wrong or anything of that nature. It's to not burden legislators with having to deal with responding to these questions. Well, let me ask you, since we're talking about Consumers Union, as I read it, it appeared to me to say that legislative immunity, there was legislative immunity for creating rules, but not legislative immunity for enforcing them. What do you think about that? Well, there's legislative immunity for creating rules, but the immunity extends not just to the votes to adopt or not adopt a particular piece of legislation. It applies to everything within the sphere of legitimate legislative activity, which I think we cited several times in our briefs, numerous court opinions. It would apply, I mean, to the conduct of a committee hearing and taking of testimony and so forth. Even in a situation like Tenney where it doesn't appear that real legislation was actually pending. Here, you know, there very clearly was. Now, the Camplain case was mentioned. I mean, it's another very good example in that what happened in Camplain, there was a legislative function and the silencing of the particularly disruptive person in that case extended beyond addressing his activity in the legislative context. Basically, you're barred from attending any city council meetings at all, henceforth. You're out of here. City councils, unlike the Colorado General Assembly and unlike its legislators, do a lot of non-legislative things. And my time is just what we need. Well, let's talk for a little bit longer just in case someone has some questions, which I have one more. And this is along the lines of your mootness arguments that have been made. Has there been a representation by the Colorado General Assembly that they're not going to enforce rules against deadnaming or the use of preferred pronouns? No. Okay. So those are still in effect. As far as we know, they will be enforced. At least nobody has disavowed them. No, nobody has disavowed them. What the district court did in that case. No, this has nothing to do with what the district court did. I'm just asking you a question because I don't want to hear later that, oh, well, we're not going to enforce them. No. Yeah, okay. They have certainly reserved the right, and I think they well may. Now, it's got to be within a context that makes sense. Actually, I would not even do that. I'm going to back off what I was about to say because I'm going to go back to Tenney. They could issue a rule that we may look at and say it has nothing to do with anything. I'm not criticizing them substantively. I'm just trying to figure out if they've said something that might end the case. No, no. Yeah. But I think they could do what you're suggesting, and it's not our prerogative to weigh in. I mean, Tenney, again, that arguably wasn't even about legislation. Arguably, but, I mean, Brando was saying, I'm not in here because of any legislation. I'm in here because I was on the wrong side of a governor's. Yeah, no. My whole point is everybody's saying that the harm is speculative. We don't even know if they're going to have any more bills. We don't even know if people are going to show up and dead name someone. We don't even know if these rules are going to be in place. And what the district court was saying there, too, is, I mean, what do you want me to enjoin? You're asking, I think the district court judge is correct on this. But you're asking me to give an advisory opinion in a context that I can't conceivably imagine. Well, as we sit here today, though, we know the rules are in place. We know a legislative session has passed in between where the same types of cases have come up, at least broadly, and that nobody's disavowed the enforcement of the rules. I mean, so it's not all entirely speculative is my point. No, but I mean, but these aren't long-time adopted rules either. I mean, they were asked in this case, would everybody please honor these, what we view as rules of courtesy, so we can have a productive hearing here. Now, will there be another case? Well, they were coercively enforced. They were, the people were cut off. Yeah, well, now that's a whole different topic. Oh, so they weren't. Your position is that they were allowed to keep speaking. They were, they were, one of them left, and this is to get it all on the record. The other one was repeatedly asked not to, and the person said, I can't, I'm going to do it, and eventually there was a ruckus in the room. You could hear it in the background of the recording that was made, not by us, but by them. You can hear it in the background, and that's what happened, and eventually apparently a sergeant at arms had to ask one of them to leave because of whatever behavior was going on, and it's not in the record. Okay, fair enough. As long as we've opened up everything. Okay, go ahead. I want to escape. Who's going to win the next Bronco game? I guess we've opened it up, maybe not quite that broadly. Okay. I'm just befuddled. The easy approach is if this is really not a case of controversy right now. I guess they've got to come up with new rules every time a legislative hearing comes forward. They can always suspend those rules in every single case, no matter what the rules are. Why isn't this no longer a case of controversy because it's passed? Putting aside the Tenney constraints, because, Your Honor, that's what you're asking me to do, because I guess my first response to your question is we shouldn't have to answer it. Well, I mean, mootness is a critical question in every case, even before we answer Tenney. Okay. Well, yes, but I mean, I think as long as we're within that seer of legitimate legislative activity, I think the legislature is given the deference to do what they want, and that's the point of Tenney and the cases that have followed it. Now, I guess if I understand the question is, can this court suggest some limitations and some better way to make the appellants in this case happier in terms of what the rules would look like in the future? I suppose we could engage in that exercise, but that is precisely the exercise I think that the Supreme Court Tenney said we should not do.  Let me stop you. I don't think that was the question. I think the question by Judge Ebel was that rules change all the time. We don't know what the rules are going to be when you convene the next hearing, and so we don't have a case. Yes, that's exactly right. It's a mootness question. My lawyer articulated it. Just not to go down that road. He's doing a good job. I don't think this court should go there under any of those circumstances. You don't think the court should go with the cop-out that my esteemed colleague is advocating, or you don't think we ought to go by cop-out? I mean, it's not a cop-out because it's a jurisdictional question, but you don't think we ought to go that route, which I first advocated, so I apologize for that word because it's not a cop-out at all, or you think that there's no merit to it? Well, I think there's no merit to it, but I don't think we should weigh into that, I guess is my point. What rules the legislature and the individual legislators want to apply to their committee hearings addressing pending legislation, not world affairs or how are we doing in Colorado, but pending legislation, that's up to them. They can do whatever they want to do. That's the absolute immunity. The absolute immunity. Yes. You, then Sable was a 1983 claim against a municipality? Who was the dependent in Sable? It was against the city council members. The members were acting in their official capacity? They were acting, yes. E.g., the committee basically then. So how, just tell me exactly what the context of this case was. Of Sable? Ours. Our present case was exclusively committee hearings. But it was a suit against these individual committee people? Right. Acting in their official capacity, seeking injunctive relief. I think the reason that that was done, why these individual legislators was named, and there's some discussion of this in the lower court opinion below, was a confusion that I can step into on a regular basis between absolute legislative immunity, the Tenney v. Brandhove world, versus 11th Amendment immunity where you can't sue the states. You can't sue the General Assembly. You have to name individuals under the ex parte young fiction. I think that is, I'll defer to Mr. Cole on that, but I think that is what was going on here. And I think the district court pretty much said that's what's going on here. We are not challenging 11th Amendment jurisdiction. We're saying the common law absolute legislative immunity. So you are specifically not asserting 11th Amendment? We're specifically, we have not asserted 11th Amendment immunity. We have asserted absolute legislative immunity, which is not 11th Amendment immunity. Let's see if Judge Federico has a question, and then let's try to wrap up. I'll save it all. Okay. Thank you, Counsel. Your time has expired. Let's add about three minutes to the appellant's time. Counsel, can I ask you to start with mootness, please? Sure, Your Honor. I'm sure it was on your list. Yeah, look, this case is not moot. They basically said we're going to enforce misgendering and dead naming rules again if it comes up, and they want to. This is very important to the Democratic Party, which controls the Colorado legislature, and it's very important to a number of their constituents. They are going to enforce those rules. The decorum rules are in place, and one of our challenges, and it's an official capacity challenge, was that the rules are vague, and they lack sufficient objective guidelines to guide enforcement discretion under Mansky. So the rules aren't, this issue is not moot for that reason also. They've not disavowed it. They still have decorum rules that are very vague, and we have a clear enforcement track record of them enforcing their misgendering ban against my clients, including going so far as erasing Christina Gokey's comments from the public record. As alleged, not proven, right? Well, as alleged, but we're entitled to. You are? Yes. Okay. So I do want to kind of pivot to Sable, because I think Sable is very important, even if you disagree with us on the issue of that this is not a legislative act, we still win under Sable and under Supreme Court precedent. In Sable, this court held legislative immunity applies only to legislators sued in their individual capacities, not to the legislative body itself. Indeed, in Sable, legislative immunity was applied only to the damages claims brought against the city council members in their individual capacities. The Section 1983 claim against the city of Nichols Hills was remanded for further proceedings, because the city was not immune from suit. This is very important. The city did not enjoin legislative immunity, only the city council members did, for the same reason that neither the state of Colorado nor its general assembly enjoy legislative immunity. This understanding of legislative immunity was binding on the district court, which mistakenly relied on out-of-circuit authority. A few points bear further discussion here. The district court was correct in concluding that sovereign immunity does not apply here, but it erred when it treated the official capacity claims as essentially individual capacity claims. And there is a particular sentence in the opinion that illustrates this mistake. It's at JA 238 of the district court's opinion. Quote, accordingly, because plaintiffs' official capacity claims are really claims against the officials and not the state, it follows that they may not assert state sovereign immunity, but may assert the personal defense of legislative immunity. End quote. This district court got it exactly wrong here and inverted it. Of course the official capacity claims are claims against the state. They are not claims against the individuals. That is just flat wrong. It is a misstatement of law. It conflicts with binding circuit and Supreme Court authority. Official capacity claims are claims against the state, and the only defenses that can be asserted are those of the state, not a personal defense. So we would ask this court to find in our favor, if not on the issue that this is an enforcement function, although we think it is, at the very least, allow our official capacity claims to go forward below. Fashioning relief here would not be hard. It is like any or many as-applied challenges. These kind of cases are my bread and butter. All we need is injunctive or declaratory relief from the district court saying don't ban misgendering or deadnaming during the public comment portion of your committee meetings, and that is official capacity relief, equitable relief, that can be granted by the district court. It would protect my client's rights to speak on rights equal to any other citizen of Colorado that wants to come in and give public comment about pending legislation. If there are no further comments or questions from the panel, we'll sit down at this time. Thank you, counsel. Thank you. Thanks to both counsel on this one. Sorry to keep you past your time, but we had a lot of interesting things that needed to be discussed. Your case is submitted and counsel are excused.